## UNITED STATES COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **JUSTIN HARVEY,** ) | |
| *Plaintiff,* ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| **COUNTY OF BREVARD, FL,** ) | |
| *Defendant* **)** | **COMPLAINT** |
| **)** | |
| and **)** | |
| **)** | |
| **JASON STEELE,** in his official ) | |
| and individual capacities. ) | |
| *Defendant.* ) | |
| _____**)** | |

## <u>COMPLAINT</u>

Comes now JUSTIN HARVEY, through his attorney, and respectfully alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3), and 42 U.S.C. § 1983.

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this District.

### PARTIES

3.    Plaintiff JUSTIN HARVEY is an adult citizen of the State of Florida.

4.      Defendant COUNTY OF BREVARD is a local government entity, a body corporate and political subdivision of the State of Florida. Brevard County was established by an act of the Florida Legislature in 1854.

5.      Defendant JASON STEELE is a member of the Board of the Brevard County Board of Commissioners and presided over the Brevard County Commission meeting on May 21, 2024.

6.      Steele, in his official capacity, exercises final policymaking authority for policies that govern the County of Brevard, including the policies governing speakers at public meetings.

7.      He is sued in his official and individual capacities.

**FACTS**

8.      This is a case of viewpoint discrimination.

9.      On May 21, 2024, Plaintiff Justin Harvey was cut off while making a public comment at a Brevard County Commission Meeting (the "Meeting").

10.     Before the Meeting, Mr. Harvey signed up to make a public comment, in accordance with the proper procedures.

11.     Defendant Jason Steele presided over the meeting.

12.     The meeting included a portion reserved for public comment.

13.     Speakers during the public comments portion are given three minutes to speak.

14.     When Mr. Harvey's name was called to address the Commission, he stepped up to the podium.

15.    Mr. Harvey was wearing a suit and tie.

16.    He spoke in a professional manner.

17.    He did not act in a disruptive manner while he spoke.

18.    He stood perfectly calm at the podium as he made his presentation.

19.    He did not raise his voice while he made his presentation.

20.    He began by introducing himself, including his name and address, and began by saying, "Good morning Commissioners. Today, I come here asking for your help."

21.    Mr. Harvey proceeded to report to the Commissioners about an ongoing crime that involves an incident that occurred inside the geographical area that makes up Brevard County.

22.    Specifically, Mr. Harvey holds the viewpoint that the astronauts who were reportedly killed when the Challenger Rocket exploded on January 28, 1986, are in fact alive and well and living under assumed identities.

23.    Mr. Harvey sincerely believes that there are irregularities surrounding the Challenger Rocket Disaster and he holds the viewpoint that a government investigation is needed and that such investigation may lead to the discovery of ongoing criminal activity.

24.    At the Meeting, Mr. Harvey attempted to present his viewpoint to the Commission and to request that the Commission "sound the alarm" by asking the federal government to conduct an investigation.

25.    As part of his presentation, he displayed a chart that showed how three of the astronauts who were widely reported to have died years ago, have identical "dopplegangers" - a person who perfectly resembles them - and that these doppelgangers have the same names and the same faces, and appear to be the same age that the astronauts would be if they were still alive today.

26.    He directed the Commission to a film called "Level With Me" which Mr. Harvey said contained exchanges with two of the doppelgangers that would allow the Commissioners to judge the veracity of the facts he presented for themselves.

27.    If true, the astronauts themselves have violated several federal, state, and local laws inside Brevard County, and are involved in an illegal fraud or scheme that likely involves other individuals.

28.    Upon information and belief, many American citizens are aware that there are irregularities with respect to what the public has been told about the Challenger, and desire that the government conduct a thorough investigation into the matter.

29.    Mr. Harvey sincerely believes that there is foul play and desires that the government conduct an investigation into the matter.

30.    Mr. Harvey is not aware of any government investigation into the matter.

31.    Mr. Harvey has a grievance against the government for not conducting an investigation.

32.     By bringing the issue to the attention of the Brevard County Commission, Mr. Harvey sought to petition the Government to redress his grievance, pursuant to his First Amendment right.

33.     Mr. Harvey had prepared a three minute presentation that he hoped to deliver to the Commission during the public comment.

34.     There is a digital clock that counts down the time for speakers before the commission.

35.     When Mr. Harvey reached the podium, the clock was set to three minutes and started to count down.

36.     When Mr. Harvey was one minute and forty seven seconds into his three minutes, when the clock still had approximately one minute and thirteen seconds remaining, Mr. Steele cut off Mr. Harvey, and said, "Sir, I am going to have to stop you."

37.     Mr. Steele told Mr. Harvey that Mr. Harvey is prohibited from giving his presentation because, he claimed, during public comment, "you're only allowed to address things we have jurisdiction over."

38.     At that point, Mr. Harvey clearly requested that the clock be stopped and that his remaining time be preserved.

39.     Mr. Harvey's request to stop the clock was not granted.

40.     While Mr. Steele addressed Mr. Harvey, the clock continued to run towards zero.

41.     Mr. Steele did not permit Mr. Harvey to speak while Mr. Steele addressed him.

42.     Mr. Steel turned towards the County Attorney, Morris Richardson, and asked Mr. Richardson to "give an opinion in regard to this."

43.     Mr. Richardson said, "Public comment is reserved for issues or topics that are under the jurisdiction or control of the County Commission or that are relevant to the business of the County Commission, so if your request at the end is going to explain why that falls into any of this make that request now before you continue."

44.     Upon information and belief, no other public comment speaker has ever been required to halt his presentation in the middle and explain how it relates to a request to the Commission before he be allowed to proceed.

45.     By the time Mr. Harvey was permitted to speak again, there were only approximately twenty-eight seconds remaining on the clock.

46.     Mr. Steele and Mr. Morris interrupted Mr. Harvey's presentation for approximately forty-five seconds of Mr. Harvey's allotted three minutes.

47.     Mr. Harvey made a direct request of the Commission to help him in "sounding the alarm and asking the federal government for help" because this incident occurred in the County.

48.     Mr. Morris interrupted him and told him that his comments were prohibited because the request is not within the jurisdiction or authority of the County Commission.

49.    Mr. Steele then said, "Thank you very much," indicating that the decision was made to deprive Mr. Harvey to complete his presentation in the remaining time.

50.    Mr. Harvey asked if he could at least finish for the remaining ten seconds that were still on the clock.

51.    Mr. Steele abruptly cut him off and said, "no sir! You are finished. Thank you."

52.    Mr. Steele would not even allow Mr. Harvey to speak for just ten more seconds.

53.    As Mr. Harvey left, Mr. Steele said, "Palm Point Behavioral Center is right down the street. That is where I suggest you go."

54.    Palm Point Behavioral Center is a facility that treats people with mental health issues.

55.    Mr. Steele was suggesting that Mr. Harvey is crazy because of his viewpoint.

56.    The rule governing public comments during meetings of the Board of County Commissioners is found in Brevard County Commissioners Policy Number BCC-97, Section III.G.1.

57.    The rule states that "The purpose of public comment is to allow individuals to comment on any topic relating to County business which is <u>not</u> on the meeting agenda." (emphasis in original).

58.    Brevard County Commissioners Policy Number BCC-97, Section III.H deals with "Rules of Decorum for Members of the Public Addressing the Board.

59.    Section III.H.1.b) states that "A speaker shall limit comments made during public comment to matters that are within the control, authority and jurisdiction of the County Commission and to those items where the Board has traditionally expressed a position for the betterment of the community interest."

60.    Nothing in those rules prohibits a comment that involves a request to the County commissioners to "sound the alarm" to the federal government about an incident that occurred within the County.

61.    On the contrary, Section III.H.2.a) states, "The County Commission declares it to be Board policy to promote the maximum participation in County affairs by affected or interested citizens in accordance with the First Amendment protections guaranteed under the United States Constitution."

62.    Section III.H.2.a) goes on to state that "it is also the Board policy, to the fullest extent possible, to protect individuals from comments that assault their character."

63.    The only assault on character during the exchange was made by Mr. Steele when he assaulted Mr. Harvey's character by suggesting Mr. Harve belongs in a mental institution because of his viewpoint.

64.    The Board violated its policy by not acting "to the fullest extent possible," or to any extent at all, to protect Mr. Harvey from an assault on his character by Mr. Steele.

65.    Moreover, Section III.H.2.d) states that "It is the policy of the Board of County Commissioners to respect minority views as well as differing opinions, conclusions, backgrounds and beliefs. The Board finds that input from differing perspectives enriches public discussion and helps to build a better consensus. It is therefore the objective of the Board to conduct business in a manner that facilitates and encourages the presentation of diverse views while maintaining civility during all Board proceedings."

66.    The Board and Mr. Steele violated this policy.

67.    The Board and Mr. Steele did not respect Mr. Harvey's view, opinion, perspective, conclusion, and belief that astronauts who were reported to have died on the Challenger are still alive.

68.    Mr. Steele does not believe that the Challenger astronauts are still alive.

69.    None of the members of the Board believe that the Challenger astronauts are still alive.

70.    Accordingly,  Mr. Harvey's view, opinion, perspective, conclusion, and belief about the Challenger is different than the view of the members of the Board, including Mr. Steele.

71.     Mr. Harvey's view, opinion, perspective, conclusion, and belief that astronauts who were reported to have died on the Challenger are still alive qualifies as a "minority" view, opinion, perspective, conclusion, and belief.

72.     The Defendants violated this rule when they prevented Mr. Harvey from speaking.

73.     They did not respect his minority and differing view, opinion, perspective, conclusion and belief.

74.     The Defendants' conduct did not encourage the presentation of Mr. Harvey's minority, differing, or diverse views.

75.     On the contrary, the Defendants' conduct discouraged his views to the extreme by declaring that they are not tolerated at all, in direct violation of the official policy.

76.     Mr. Harvey maintained civility at all times during his presentation.

77.     Mr. Steele did not maintain civility when he assaulted Mr. Harvey's character by suggesting that Mr. Harvey belongs in a mental institution.

78.     To the extent that any such rule or policy exists that prohibits Mr. Harvey from requesting the Commission during public comment to "sound the alarm" to the federal government about something that occurred and is occurring within the County, such rule or policy violates Florida Statute, Section 286.0114(4).

79.     Section 286.0114(4) states that "rules or policies of a board or commission which govern the opportunity to be heard are limited to those that:

(a) provide guidelines regarding the amount of time an individual has to address the board of commission; (b) prescribe procedures for allowing representatives of groups or factions on a proposition to address the board or commission, rather than all members of such groups or factions, at meetings in which a large number of individuals wish to be heard; (c) prescribe procedures or forms for an individual to use in order to inform the board or commission of a desire to be heard; indicate his or her support, opposition, or neutrality on a proposition; and to indicate his or her designation of a representative to speak for him or her or his or her group on a proposition if he or she so chooses; or (d) designate a specified period of time for public comment.

80.   Florida law does not allow Brevard County to limit public comments to specific matters within the "jurisdiction" or "authority" of the Commission.

81.   Even if Florida law allowed for such a rule or policy, a rule or policy that limits public comments to "matters that the County has jurisdiction over" provides no guidance to speakers as to what is permitted and what is not.

82.   Mr. Harvey was never given any guidance as to what is considered a permitted comment and what is considered a prohibited comment.

83.   Upon information and belief, no such guidelines are presented anywhere to the public.

84.   On the contrary, Section III.H.2.e) expressly states that public commenters may "bring to the attention of the County Commission possible violations of the Code of Ethics for Public Officers and Employees ... or violations

of other laws over which the Commission has jurisdiction or authority to take corrective action."

85.    Mr. Harvey sought to bring to the attention of the County Commission possible violations of ethics and/or laws of public officers and employees and violations of other laws, and asked the Commission to "take corrective action" by "sounding the alarm" to the federal government.

86.    If the rule is to be interpreted as the Defendants' suggested and that they can decide without any standard what topics are within the Commissions control, authority, or jurisdiction, then such a rule would effectively give the County Commission unbridled discretion to decide who can speak and who cannot.

87.    If such a rule exists, the County does not strictly enforce it.

88.    As an example, on May 7, 2024, a homeless man told a tragic story about his personal problems.

89.    This is typical of public meetings. Citizens with nowhere else to turn express their grievances during the public comments and hope that their elected officials will listen to them.

90.    There is no discernible articulable standard whereby the personal problems expressed by the homeless man during public comment on May 7, 2024 are permitted, but Mr. Harvey's comments are prohibited.

91.    Further, even if there were such a rule that prohibited Mr. Harvey's comments, and such a rule was legal in the state of Florida, and the rule had

discernible standards, and the rule did not give the Commission unbridled discretion, - even if all of that were true - Mr. Harvey's public comment asked the Commission to address a matter that is squarely within the Commission's jurisdiction.

92.    Mr. Harvey simply asked that the Commission help him in "sounding the alarm" by asking the federal government for help with an incident that occurred within the County.

93.    It is within the jurisdiction of Brevard County to communicate with the Federal Government to address issues that occur within  Brevard County.

94.    Brevard County frequently communicates with and receives assistance from FEMA, the FBI, the National Guard, the Department of Justice, and other federal agencies for matters that occur within Brevard County.

95.    For instance, the Brevard County Sheriff's Investigative Support Unit works together with federal law enforcement to solve crimes.

96.    As another example, at that very meeting, just before Mr. Harvey spoke, the Commission approved a "Letter to Honorable Pete Buttigieg, Secretary of Transportation" asking for assistance.

97.    Pete Buttigieg was the head of a federal government agency at the time of the meeting.

98.    As another example, Item H.7 at that very meeting addressed a facility that works "hand and hand with NASA" on rocket launches, and is essential to rocket launches that occur within the County.

99.    Item H.7 involved problems that arose as a direct result of NASA's increase in space flights over recent years, and complaints about the activity brought to the attention of the County by concerned citizens.

100.    The fact that the County spent considerable time hearing Item H.7 shows that consequences of NASA rocket launches are well within the Commission's jurisdiction.

101.    It is patently obvious that the stated reason that Mr. Steele and Mr. Richardson gave for silencing Mr. Harvey was not because of any rule or policy that limits public comments.

102.    From Mr. Steele's comments, it is clear that Mr. Harvey was silenced because Mr. Steele considers Mr. Harvey's viewpoint to be crazy and he discriminated against Mr. Harvey because of his viewpoint.

103.    Prior to being cut off, Mr. Harvey did not disrupt the meeting.

104.    Prior to being cut off, Mr. Harvey was not boisterous.

105.    Prior to being cut off, Mr. Harvey did not use profanity.

106.    Prior to being cut off, Mr. Harvey did not assault any one's character.

107.    Prior to being cut off, Mr. Harvey did not engage in what the Supreme Court has defined as "fighting words."

108.    Prior to being cut off, Mr. Harvey maintained civility.

109.    Prior to being cut off, Mr. Harvey did not engage in any slanderous speech.

110.   Prior to being cut off, Mr. Harvey did not say anything that was impertinent.

111.   Mr. Harvey was cut off from speaking because he expressed his diverse, minority, and differing viewpoint.

112.   The Defendants' actions were motivated by improper viewpoint discrimination.

113.   Each individual Commissioner was well-aware of the censorship occurring in his or her presence, acquiesced to it, and endorsed Mr. Steele's censorship and punishment of Mr. Harvey.

114.   Any reasonable public official should know that the Defendants' conduct violated a clear constitutional right.

## CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983, First Amendment, as to all defendants

115.   The foregoing paragraphs are incorporated by reference as if set forth fully herein.

116.   When Mr. Harvey was cut off from presenting at the Meeting, he was engaged in protected speech.

117.   At the time Mr. Harvey was cut off, he was delivering a public comment and reporting what he sincerely believes to be a crime that was committed within Brevard County.

118.   The subject and his viewpoint were appropriate for the public forum where he chose to address them.

119.   Mr. Harvey exercised his right of free speech in a limited public forum.

120.   Mr. Harvey spoke during the public comments portion of the Meeting which allows for public comments on items not on the agenda for three minutes.

121.   Mr. Harvey did not violate any reasonable rules when he spoke.

122.   Mr. Harvey spoke on an appropriate topic in an appropriate manner, during his allotted time.

123.   Mr. Harvey was ejected under the pretext of a non-existent or else unlawful policy or rule that prohibits public comments that address topics that are "not within the jurisdiction" of the Commission.

124.   No guidelines exist as to what constitutes a topic that is permitted or what constitutes a topic that is forbidden.

125.   What Mr. Steele actually meant was that Mr. Steele and the County disagree with Mr. Harvey's viewpoint and do not want to hear it mentioned at a meeting.

126.   The decision to silence Mr. Harvey was motivated by the Defendants' ideology with respect to the viewpoints, opinions, and perspectives expressed by Mr. Harvey during his public comments.

127.   To the extent that any rule or policy provides the Defendants the authority to silence a speaker based on the viewpoint of the speaker, such policy violates the First Amendment of the Constitution.

128.   The Defendants' justification for cutting off Mr. Harvey does not satisfy any standard.

129.   The Defendants violated their own rules and policies.

130.   The Defendants acted with an improper motive when they silenced Mr. Harvey.

131.   Any public official should know that ejecting a speaker for expressing a viewpoint based on no specific policy or rule violation, or based on a vague or overbroad rule or policy, violates a clearly established constitutional right.

## COUNT II: 42 U.S.C. § 1983, First Amendment Retaliation, as to all defendants

132.   The foregoing paragraphs are incorporated by reference as if set forth fully herein.

133.   Mr. Harvey was engaged in the constitutionally protected activity of speaking at a Board of Commissioners meeting about a topic of public concern during the time reserved for comments on topics not on the agenda.

134.   The Defendants' actions caused him to suffer an injury, namely the deprivation of his First Amendment right.

135.   The manner of the deprivation would chill a person of ordinary firmness from continuing to engage in that activity.

136.   A person of ordinary firmness could not continue to address the Commission after being silenced.

137.   Mr. Harvey could not continue to address the Commission under the circumstances.

138.   The Defendants' actions were motivated by the content of Mr. Harvey's speech and based on his viewpoint about the truth regarding the Challenger Rocket Explosion.

139.   The Defendants' also acted specifically against Mr. Harvey because they believe that he belongs in a facility for the mentally disabled.

### COUNT III: Prior Restraint, as to all defendants

140.   The foregoing paragraphs are incorporated by reference as if set forth fully herein.

141.   To the extent that a rule, law, or policy exists that gives the Defendants unbridled discretion to determine which public comments are "with its jurisdiction" and which comments are not, and to silence speakers if in the Defendants' unbridled discretion the speech is not, then such policy constitutes a prior restraint on speech.

142.   The policy prevented and continues to prevent Mr. Harvey from addressing the Commission on issues that are important to him based solely on the content and viewpoint of his speech.

### COUNT IV: 42 U.S.C. § 1983, Fourteenth Amendment Due Process, as to all defendants

143.   The foregoing paragraphs are incorporated by reference as if set forth fully herein.

144.   Due process is violated by punishing Mr. Harvey under vague, overbroad, retroactive, and/or constantly changing policies that authorize or even encourage arbitrary and discriminatory enforcement for expressing disfavored viewpoints at public meetings.

145.   Defendants violated Mr. Harvey's right to due process of law under the Fourteenth Amendment by applying such policies against Mr. Harvey.

146.   Defendants' policies and related practices are overbroad because they encompass a substantial amount of constitutionally protected speech.

147.   The Defendants' custom and practice are unconstitutionally vague because they grant the Defendants unbridled discretion in deciding what constitutes a violation of their speech code.

148.   The "within the jurisdiction" standard is inherently subjective and eludes any precise or objective definition that would be consistent from one speaker to another because it is incapable of providing meaningful guidance to any speaker or official, and because it forces speakers and officials to guess whether expression is protected under the First Amendment and therefore allowed at a public meeting.

149.   The lack of objective criteria, factors, or standards in Defendants' policies and related practices, including the lack of notice of evolving policies and the unequal treatment of Ms. Harvey and other similarly situated public speakers render these policies and practices unconstitutionally vague and in violation of Mr. Harvey's right to due process of law under the Fourteenth Amendment.

**COUNT V, 42 U.S.C. § 1983, Fourteenth Amendment Equal Protection,**

**as to all defendants**

150.   The foregoing paragraphs are incorporated by reference as if set forth fully herein.

151.   By silencing Mr. Harvey for expressing his viewpoint that the Challenger Rocket astronauts are still alive, and for not silencing and removing speakers who express other views, Defendants have violated Mr. Harvey's right to equal protection of the law under the Fourteenth Amendment.

152.   Mr. Harvey is similarly situated to other public speakers who present public comments at Brevard County Commission meetings and express different views or views that the County deems to be "within its jurisdiction."

153.   Defendants' customs, practices, and their enforcement have also been applied to discriminate intentionally against Mr. Harvey's rights to freedom of speech and right to due process of law. Thus, discriminatory intent is presumed.

154.   Defendants' policies and related practices are underinclusive, prohibiting some expression while leaving other expression unprohibited.

155.   Defendants applied their policies and related practices to Mr. Harvey in a discriminatory and unequal manner, granting other speakers the right to express their views while denying that right to Mr. Harvey, in violation of Mr. Harvey's right to equal protection of the law under the Fourteenth Amendment.

156.   Specifically, as one example of a similarly situated comparator, at a meeting on May 7, 2024, a homeless man gave a speech expressing his viewpoint about topics outside of the County's jurisdiction, and he was not silenced.

157.   By only applying the "within the jurisdiction" rule against some speakers and not others, the Defendants engaged in quintessential viewpoint discrimination in violation of the Fourteenth Amendment.

## PRAYER FOR RELIEF

A. An order declaring the Defendants' conduct and policies to be unlawful and unconstitutional;

B. An order enjoining the Defendants from continuing to engage in conduct or to enforce policies found to be unconstitutional;

C. An order awarding nominal damages for violations of Mr. Harvey's Constitutional rights;

D. Any other relief, including attorney's fees, the Court judges to be proper, and/or is permitted by statute, including but not limited to 42 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues triable.

Dated: July 22, 2024                              Respectfully submitted,


                                                  <u>/s/</u>**Jonathan Gross**
                                                  Jonathan Gross
                                                  Texas Bar No. 24133833
                                                  MD Bar No. 1912170138
                                                  2833 Smith Ave.
                                                  Suite 331
                                                  Baltimore, MD 21209
                                                  (443) 813-0141
                                                  jonathansgross@gmail.com

                                                  *Counsel for Plaintiff*